UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

JESSE BLANCO, :
        Plaintiff, :
 :
v. : No. 5:20-cv-02072
 :
CITY OF READING, :
        Defendant. :
_____

**O P I N I O N**
**Defendant's Motion to Dismiss or to Strike, ECF No. 19 – Granted**

**Joseph F. Leeson, Jr.**                                                                                                 June 1, 2021
**United States District Judge**

**I.**       **INTRODUCTION**

Plaintiff Jesse Blanco claims that his right to be free from discrimination under the Equal Protection Clause of the Fourteenth Amendment was violated when he experienced a racially hostile work environment at, and was wrongly terminated by, his former employer the City of Reading. This is the sole claim remaining in the above-captioned action and is the subject of a motion to dismiss or, in the alternative, to strike certain paragraphs. For the reasons set forth herein, the motion to dismiss is granted.

**II.**      **BACKGROUND**

Blanco initiated this action against the City asserting numerous federal and state law claims, all but one of which was previously dismissed with prejudice in an Opinion dated March 26, 2021. *See* Opn., ECF No. 16. Blanco was granted leave to file a Third Amended Complaint ("TAC") as to his hostile work environment claim pursuant to the Equal Protection Clause of the Fourteenth Amendment. *See* ECF No. 19. The City has moved to dismiss the TAC for failure to

state a claim or, in the alternative, to strike paragraphs 37, 39, 41, 44, 49 through 52 and 65 through 74, and 85. Mot., ECF No. 19. The matter is fully briefed. *See also* ECF Nos. 22-23.

The relevant factual allegations from the Amended Complaint are included in the TAC. These allegations will not be recited herein as they were detailed in the Opinion dated March 26, 2021. This Opinion will only discuss whether the additional allegations have cured the deficiencies previously identified.

## III. LEGAL STANDARDS

### A. Motion to Dismiss - Review of Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B. Motion to Strike - Review of Applicable Law

A court may strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored and are considered a "drastic remedy to be resorted to only when required for the purposes of justice." *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (quoting *N. Penn Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994)). Thus, the moving party generally must demonstrate that the material "has no possible relation to the controversy and may cause prejudice to one of the parties." *Id.* at 428-29 (quoting *River Rd. Dev. Corp. v. Carlson Corp.-Ne.*, No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)). "Even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *Pennington v. Wells Fargo Bank, N.A.*, 947 F. Supp. 2d 529, 534 (E.D. Pa. 2013) (quoting *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376, 379 (D. Del. 2012)).

### C. Equal Protection Violation under § 1983 - Review of Applicable Law

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, the plaintiff must establish: (1) the existence of purposeful discrimination; and (2) the defendant's personal involvement in this discrimination. *See Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (citing *Andrews v. Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990)). A "plaintiff may prove an equal protection claim by establishing that he or she was subjected to a hostile work environment." *Pollock v. City of Phila.*, No. 06-4089, 2008 U.S. Dist. LEXIS

60764, at *28 (E.D. Pa. Aug. 7, 2008), *aff'd* 403 F. App'x 664, 665 (3d Cir. 2010). To state such a claim, the plaintiff must show: (1) he suffered intentional discrimination based on race; (2) the discrimination was pervasive and regular; (3) the discrimination had a detrimental impact on the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person of the same race; and (5) a basis for personal liability. *See Andrews*, 895 F.2d at 1482; *Pollock*, 2008 U.S. Dist. LEXIS 60764, at *29-30. The plaintiff must demonstrate that he "received different treatment from that received by other individuals similarly situated." *Andrews*, 895 F.2d at 1478. Such disparate treatment must be based upon membership in a protected class, such as race. *See Shuman*, 422 F.3d at 151.

"Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A "municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipality may be liable under 42 U.S.C. § 1983 if the plaintiff can show either: (1) an employee acted pursuant to a formal policy or a standard operating procedure; (2) the alleged violations were taken by a person with policy-making authority; or (3) an official with such authority has ratified the unconstitutional actions of a subordinate. *See Phillis v. Harrisburg Sch. Dist.*, 430 F. App'x 118, 123 n.7 (3d Cir. 2011). "[I]t is when execution of a [municipality's]

policy[1] or custom,[2] whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) ("Mere assertion of an entitlement to relief, without some factual 'showing,' is insufficient under Fed. R. Civ. P. 8(a)(2)."). Further, the fact that the individual "-- even a policymaking official -- has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986) ("We hold that municipal liability under § 1983 attaches where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). The "plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

---

1     "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews*, 895 F.2d at 1480); *Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *10-11 (E.D. Pa. June 30, 2008) ("A municipal policy, for purposes of Section 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers." (citing *Monell*, 436 U.S. at 690)). A "policy cannot ordinarily be inferred from a single instance of illegality. . . ." *Losch v. Parkesburg*, 736 F.2d 903, 911 (3d Cir. 1984).

2     A custom, although not authorized by written law, has the force of law because it is such a permanent and well-settled practice. *See Monell*, 436 U.S. at 690.

## IV.     ANALYSIS

In the Opinion dismissing, without prejudice, Blanco's equal protection claim in the Amended Complaint, this Court observed: "[w]hat is noticeably absent from the Amended Complaint are any factual allegations that the alleged discriminatory comments were related to Blanco's race." Opn. 15.  The Amended Complaint also failed to allege that Blanco was treated differently from similarly situated individuals.  Because the complained of conduct was easily susceptible to explanation on non-race-based and non-discriminatory grounds, this Court found the failure to make such allegations was "particularly important in this case."  *See* Opn. 15-16.

Although the TAC includes allegations that the City treats "similarly situated" Caucasian or white Hispanic employees differently by allowing them to work without the required certifications, it does not identify any such employees by name or title, does not list any of their job duties or certification requirements, and does not indicate whether they have the same supervisor as Blanco.  *See* TAC ¶¶ 45, 75.  Further, these employees are alleged to work in the Sewer Department, which is a separate department within the Department of Public Works, under which Blanco is employed as a carpenter.  *See* TAC ¶¶ 7, 45(A).  Blanco contends that the employees of the Sewer Department are similar merely because "they work on City of Reading sewers and wastewater."  *See* TAC ¶¶ 45, 75.  However, "[p]ersons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'"  *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).  The allegations in the TAC are woefully inadequate from which to make this determination.  *See Fisher v. Catholic Soc. Servs.*, No. 18-CV-04653, 2019 U.S. Dist. LEXIS 133322, at *14-15 (E.D. Pa. Aug. 7, 2019) (dismissing the plaintiff's race discrimination claim because "bald statements" that similarly situated white employees were treated differently "without identifying

any comparators or how they were similarly situated is exactly a '[t]hreadbare recital[] of the elements of a cause of action' that *Iqbal* repudiates" (quoting *Iqbal*, 556 U.S. at 678)).

Lack of sufficient comparator allegations is fatal to Blanco's claim because his TAC, like his previously dismissed Amended Complaint, fails to state a claim for racial discrimination. The TAC includes a number of new allegations that a particular building inspector was a "bigot" and that the department had received many complaints of racial discrimination. *See* TAC ¶¶ 37-43. However, Blanco's suggestion that the Mayor believed this inspector and other inspectors to be racially bigoted does not show that Blanco experienced any discrimination. Further, when Blanco reported the inspector's purportedly discriminatory January 15 behavior, the inspector was written up for insubordination. *See* ¶¶ 57-59. The additional allegations in the TAC do not show that the decision to rescind Blanco's employment offer was racially motivated and there are no other new allegations of discrimination sufficient to save Blanco's claim.

Moreover, Blanco has again failed to connect any allegedly discriminatory behavior to the City.[3] The purportedly bigoted building inspector played no part in making the decision to terminate Blanco's employment, nor was the inspector in a supervisory or policy-making position. Although the TAC repeats its allegation that Kelly made all decisions regarding the termination of non-department heads and therefore had "the power to make policy for the City," *see* TAC ¶ 65(D), this Court previously explained that even if Kelly had authority for hiring and firing decisions, he did not have policy-making authority. *See* Opn. 14 (citing Reading Code of Ordinances § 308(i) (stating that the mayor is "responsible for the establishment and development of administrative policy to be implemented by the Managing Director"), § 406(3)

---

[3] The references in the TAC to the Mayor being the "chief policy making official," *see* TAC ¶¶ 49, 51(C), are misleading because the only actions he is alleged to have taken in that capacity relate to the Blanco's offer of employment.

(listing the powers and duties of the Managing Director)). Perhaps in recognition of the Court's Opinion, Blanco removed his allegation from the TAC that Kelly's decisions were "final and unreviewable." *Cf.* Am. Compl. ¶ 57(D), *with* TAC ¶ 65(D). Although the TAC suggests that Culp was also a policy-maker, *see* TAC ¶ 85 (alleging that the decision to terminate Blanco's "employment was made by persons who are policymakers of [the City]"), she is also not alleged to have "final" policy-making authority.[4] The conduct of these individuals therefore cannot impute liability on the City. *See Pembaur*, 475 U.S. at 481-83 ("The fact that a particular official -- even a policymaking official -- has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."). Accordingly, Blanco has only one other means to impose liability on the City: he must allege that one of these City employees was acting pursuant to a policy or custom of the City, and that policy or custom caused the violation of his constitutional rights.[5] *See Monell*, 436 U.S. at 694.

The TAC does not specifically identify a policy or custom of the City that

---

[4] In opposition to the Motion to Dismiss, Blanco asserts that Culp is a policymaker and purportedly quotes paragraph 60(C) of the TAC. *See* Opp. 10 n.6, ECF No. 22-1. There is no such paragraph in the TAC. *See* TAC ¶ 60. Regardless, even assuming the allegation quoted in Blanco's opposition brief was included in the TAC, *see* Opp. 10 n.6 ("'She determines how Human Resources procedures and rules are implemented and applied in the City of Reading.' (TAC at ¶60(C))," it does not allege that Culp had "final" policy-making authority.

[5] "Alternatively, a municipality may be held liable for its failure to take action to stop the harassment if there is a demonstration of 'deliberate indifference' to the harassment." *Goldberg v. City of Phila.*, No. 91-7575, 1994 U.S. Dist. LEXIS 8969, at *28-29 (E.D. Pa. June 29, 1994) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989)). Deliberate indifference must have caused the constitutional violation. *See id.* Because there are no allegations in the TAC of deliberate indifference, it is not necessary to consider this avenue of municipal liability.

caused[6] the deprivation of Blanco's constitutional rights. Moreover, to the extent the TAC may be liberally construed as alleging that the City has a practice of allowing Caucasian employees, but not non-Caucasian employees, to work without required certificates, *see, e.g.* TAC ¶ 75, the TAC does not include sufficient allegations that the City had knowledge of such a practice.[7]

## V. CONCLUSION

The Third Amended Complaint fails to state a hostile work environment claim pursuant to the Equal Protection Clause of the Fourteenth Amendment. Blanco has failed to sufficiently allege that he was discriminated against and, even if he had, Blanco has failed to show the City is personally responsible for any discrimination. The Motion to Dismiss is granted. Because Blanco was previously afforded an opportunity to amend his pleadings, the Third Amended Complaint is dismissed with prejudice.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[6] *See Estate of Roman*, 914 F.3d at 798 (holding that a plaintiff illustrates that a custom was the proximate cause of his injuries by demonstrating that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury" (internal quotations and alterations omitted)).

[7] The TAC alleges that on January 23, 2020, Blanco informed Culp of the racially discriminatory conduct of the building inspectors, and the following day he was terminated. *See* TAC ¶¶ 64-65. In his opposition brief, Blanco further asserts that he alleged in the TAC that he reported to Culp, the day before he was terminated, that Caucasian and/or Caucasian Hispanics had for years been permitted to continue working in their positions even though they have not obtained the required certification, *see* Opp. 17, but the TAC does not make such allegations, nor would this single report to Culp the day before Blanco's termination have been sufficient to impose knowledge on the City. Blanco also suggests for the first time in his opposition brief that the City, "through its Mayor officially permitted a segment of those employees who are white to continue working without required certificates." *See* Opp. 20. There are no allegations in the TAC to support this statement.